Ronald MOSS, a minor, By and Through his next friend and Grandmother, Sarah Sermons, on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

Sidney WEAVER et al., Defendants.

No. 73–1544–Civ–JE.

United States District Court, S. D. Florida, Miami Division.

Aug. 30, 1974.

**132**

Steven Wisotsky, Legal Services of Greater Miami, Inc., Miami, Fla., for plaintiffs.

Stuart Simon, Dade County Atty., Alan T. Dimond, Asst. County Atty., Miami, Fla., James G. Mahorner, Gen. Counsel, State of Florida Dept. of Health and Rehabilitative Services, Tallahassee, Fla., for defendants.

## DECLARATORY JUDGMENT AND INJUNCTION

EATON, District Judge.

This cause came on to be heard upon cross motions for summary judgment.

The parties to this cause have filed a Stipulation of Facts and Genuineness of Documents and are agreed that there is no genuine issue as to any material fact in this suit.

This is a class action [1] under the Civil Rights Act, 42 U.S.C. § 1983. Jurisdiction is grounded upon 28 U.S.C. § 1343(3). The complaint seeks declaratory and injunctive relief against the practice of the Juvenile and Family Division Judges of the Circuit Court of imposing pretrial detention upon accused delinquents without determining whether there is probable cause to believe that an offense was committed and that the accused committed it.

The gravamen of the Plaintiffs' cause of action is that the Fourth and Fourteenth Amendments to the United States Constitution require that a person accused of a violation of law may not be detained pending trial unless there is a legal basis for such detention, i. e., unless there is a judicial determination of probable cause to believe that an offense has been committed and that the accused juvenile committed it.

Under the present procedures of the Juvenile Court, juveniles are generally taken into custody pursuant to an arrest by the police, although sometimes by other authorities. They are delivered into the custody of the Florida Division of Youth Services where a screening officer in the Intake Department makes an administrative determination whether to detain or release the child pending his or her first appearance before a Judge of the Juvenile Court. Such proceeding is known as the predetention hearing. If the Division of Youth Services official determines to detain the juvenile, he or she will be locked up in the Walter Beckham Youth Hall, or in rare cases, an adult jail. Walter Beckham Youth Hall is a locked and secure detention fa-

1. By its Order of March 7, 1974, the Court determined that the cause should be maintained as a class action and defined the class as follows: All juveniles subject to the jurisdiction of the Juvenile Court [persons less than eighteen years of age] who have been, are being, or will be incarcerated pending trial solely upon an allegation of criminal conduct contained in a Petition for Delinquency without a prior judicial hearing to determine whether there is probable cause to believe the juvenile has committed the offense of which he is accused.

cility and not merely a rehabilitation facility.

After this administrative determination to detain the juvenile is made, Florida Rule of Juvenile Procedure 8.110(a) provides that the judicial detention hearing shall take place within 48 hours after the child is taken into custody, excluding Sundays and legal holidays. During this hiatus, the Division of Youth Services refers the case to the State Attorney for the filing of a Petition of Delinquency. At the detention hearing, the accused is advised of the charge contained in the Petition, Public Defender represents the accused juvenile if the juvenile is indigent, a plea is entered, and the Judge considers whether the juvenile should be detained or released pending the adjudicatory hearing. In deciding whether to release or detain the accused juvenile, the Judge considers the following criteria:[2]

1. Whether detention is required to protect the person or property of the child or of others.

2. Whether a parent or guardian is available and able to provide adequate care and supervision for the child.

3. Whether such parent or guardian convincingly assures the Court of the child's future presence at the adjudicatory hearing.

Counsel for the parties have agreed that in practice, the *seriousness of the alleged offense* which gave rise to the juvenile having been taken into custody is frequently considered by the Judge as the Judge makes the determination as to whether the juvenile should be detained or released.

If the Judge determines that the juvenile is not eligible for release under these criteria and determines to detain him, he is required by F.R.J.P. 8.050(a)(4) to "[m]ake a finding that the release of the child would be inimical to the welfare of the child or of the public, stating the reasons."

■ It is stipulated by the parties that the Judge makes no inquiry into probable cause in connection with this determination whether to detain or release the child because "The overriding concern of the Court at this hearing is whether release of the child would be inimical to the welfare of the child or of the public." (Stipulation of counsel, paragraph 10.) The Defendants assert in their memorandum of law in support of motion for summary judgment as follows:

> "Immediately after arrest, the Court is not especially concerned with the child's guilt or innocence; it is concerned about his welfare. In examining the system for fairness, it should be remembered that even an innocent child would not be released if it would be inimical to his welfare (or to the public's)."

The memorandum continues:

> "Defendants suggest it is 'fairer' to the child to detain him—with or without probable cause—if it is inimical to his welfare to release him."

This concern for the welfare of the juvenile is laudable, but detention absent a probable cause showing is not constitutional where the juvenile was taken into custody by an arm of the government for an alleged violation of law.

Happily, however, if there is a danger to the community or to the juvenile, appropriate proceedings to declare a child "dependent" or "in need of supervision" are available in Florida's Juvenile Justice System. *See* Fla.Stat.Ann. § 39.01 (10) and (11).

Plaintiffs emphasize that they are not seeking a probable cause determination in every case of delinquency. Rather, the probable cause hearing is sought to test the validity of the juvenile's pretrial detention only in those cases in which the Juvenile Judge refuses to release him under existing criteria or procedures set forth in Fla.Stat.Ann. ch. 39

2. F.S. § 39.03(3)(c).

and the Florida Rules of Juvenile Procedure.

 Since money bail is not available in the Juvenile Court System, a Judge's decision to detain the juvenile necessarily results in pretrial detention. The Court is persuaded that a probable cause hearing must be provided to such detained juveniles to test the validity of detention, because the event which triggers their being taken into custody in the first instance is the alleged commission of a criminal offense. Indeed, the very nature of a delinquency proceeding is to determine whether the accused has committed a violation of law. See Fla. Stat.Ann. § 39.01(6), (12). " 'Violation of law' means a violation of any law of the United States or of the state, or of a local ordinance, which would be a misdemeanor or a felony if committed by an adult." Fla.Stat.Ann. § 39.01(31). The commission of an offense is thus the only legal basis for detention. If the state cannot show that there is probable cause to believe that the detained juvenile committed an offense, then the juvenile must be released from custody.

This is not a novel proposition of law. Decided cases are quite emphatic in upholding the right of an accused delinquent to be released from custody unless there is a showing of probable cause. Cooley v. Stone, 134 U.S.App.D.C. 317, 414 F.2d 1213 (1969); Baldwin v. Lewis, 300 F.Supp. 1220 (E.D.Wis.1969), reversed for failure to exhaust state remedies, 442 F.2d 29 (7th Cir. 1971); Black Bonnet v. State of South Dakota, 357 F. Supp. 889 (D.S.D.1973) (three judge court). In Cooley, supra, the District of Columbia Court of Appeals held as follows:

"No person can lawfully be held in penal custody by the state without a prompt judicial determination of probable cause. The Fourth Amendment so provides and this constitutional mandate applies to juveniles as well as adults. Such is the teaching of Gault and the teaching of Kent."

The Cooley case is especially significant because it was relied upon by the Court in Pugh v. Rainwater, 332 F. Supp. 1107, 1114 (S.D.Fla.1971), aff'd, 483 F.2d 778 (5th Cir. 1973) cert. granted sub nom. Gerstein v. Pugh, 414 U.S. 1062, 94 S.Ct. 567, 38 L.Ed.2d 467 (1974), to extend to adult defendants proceeded against by information the right to have a preliminary hearing to challenge the validity of pretrial incarceration under the standard of probable cause.

 In addition to these authorities, the classical principles of procedural due process of law mandate that the state may not impose a deprivation of life, liberty or property without an appropriate due process hearing.[3] Applying this general principle, the United States Supreme Court has held that even the conditional liberty of a parolee or probationer, granted not as a matter of right, but as a matter of grace, is protected by the Due Process Clause and may not be revoked without a hearing addressed to the question of whether the conditions of parole or probation have been violated. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484

3. In some cases, a hearing is required prior to the deprivation, e.g., Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Bell v. Burson, 402 U.S. 535, 91 S. Ct. 1586, 29 L.Ed.2d 90 (1971). In other circumstances, the hearing may be postponed for a short period of time after the deprivation, e.g., Mitchell v. W. T. Grant, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Under no circumstances, however, may a governmental authority take liberty or property without an adequate opportunity for a hearing appropriate to the circumstances of the case. This is so because of the organic principle that "a fundamental [requirement of due process] is the opportunity to be heard." Grannis v. Ordean, 234 U.S 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). "Persons whose rights are to be affected must be afforded a hearing 'at a meaningful time and in a meaningful manner.' " Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

(1972); Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). If the conditional liberty of persons convicted of crime may not be taken away without the observance of procedural due process, it follows *a fortiori* that the liberty of one who is presumed innocent[4] at the time he is taken into custody may not be taken away without a hearing to determine probable cause.

■■■ In granting the Plaintiffs request for relief, this Court is not unmindful that the principles of comity and federalism dictate caution in issuing orders that affect a state's system of justice. However, no injunction or interference with any state proceeding is sought herein, and the granting of the requested relief will not result in the dismissal of any petitions of delinquency now pending or to be filed in the future. The Court's ruling is limited to a declaratory judgment, supplemented by an appropriate injunction, that the Defendants must provide certain accused juveniles an additional procedural right—a probable cause hearing—in those cases in which the accused juvenile is denied release from custody under the existing criteria or procedures.

In consideration of the foregoing, it is

Ordered and adjudged as follows:

■ 1. Pursuant to 28 U.S.C. §§ 2201, 2202 and Rule 57, Fed.R.Civ.P. the Court enters a declaratory judgment that accused juvenile delinquents may not be detained in custody without a judicial determination of probable cause, such determination to be made within forty-eight hours after the juvenile is taken into custody.

2. An injunction is hereby entered permanently enjoining the Defendants from holding an accused juvenile delinquent in custody without such prompt judicial determination of probable cause.

■ 3. The right to a prompt determination of probable cause does not depend upon a request, and a hearing must be accorded to the detainee without demand on his part unless such hearing is voluntarily, knowingly, and intelligently waived.

■ 4. Without detailing the precise nature of the probable cause hearing, due process of law requires at a minimum that a showing of probable cause be made by competent, sworn testimony, and that witnesses be subject to cross-examination. The Court assumes that the state public defender will continue to be appointed to represent indigent juveniles.

5. Nothing contained in this Order shall be construed to prevent or abridge the power of Defendants to release accused juvenile delinquents from custody, without a probable cause hearing, under the provisions of Chapter 39 of the Florida Statutes or the Florida Rules of Juvenile Procedure.

6. The Court hereby retains jurisdiction over this cause and the parties hereto for the purpose of enforcing this Order.

7. The Defendants are hereby granted ninety days in which to bring themselves into full compliance with this Order.

---

4. The presumption of innocence in juvenile delinquency proceedings is guaranteed by the Due Process Clause. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).