Ronald MOSS, etc., and Sarah Sermons, etc., et al., Plaintiffs-Appellees,

v.

Sidney WEAVER, Donald Stone, Dixie Chastain, William Gladstone, etc., and Richard E. Gerstein, etc., Defendants-Appellants.

No. 74–3672.

United States Court of Appeals, Fifth Circuit.

Jan. 19, 1976.

Stuart Simon, Dade County Atty., Alan T. Dimond, Asst. County Atty., Miami, Fla., for Weaver, Stone, Chastain, Gladstone, Gerstein.

Steven Wisotsky, Melvin S. Black, Miami, Fla., for plaintiffs-appellees.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

Ronald Moss filed this class action seeking declaratory and injunctive relief against the judges of the Juvenile and Family Division of the Circuit Court of Dade County, Florida, and against the state attorney for that county. The suit challenges the juvenile court judges' practice of imposing pretrial detention upon accused juvenile delinquents without determining whether there is probable cause to believe that the accused has committed an offense. The District Court found the practice unconstitutional and ordered that no accused delinquent could be held in custody without a showing of probable cause made in an adversary proceeding. 383 F.Supp. 130 (S.D. Fla.1974). We affirm, except that we hold that the Constitution does not require a hearing as full as that prescribed by the District Court.

Under Florida law a juvenile taken into custody on a charge of violating the criminal law is brought within 48 hours to a "pre-detention hearing," where the court decides whether to release or detain him pending a formal "adjudicatory hearing." The applicable statute specifies three factors for the judge to consider: whether detention is necessary to protect the person or property of the child or of others; whether a parent or guardian is available and able to provide adequate care and supervision for the child; and whether the parent or guardian convincingly assures the court of the child's future presence at the adjudicatory hearing. Fla.Stat. § 39.03(3)(c). The parties agree that in practice the seriousness of the alleged offense is also frequently taken into consideration. If a decision is made to detain the child, money bail is not available.

The District Court concluded that this scheme embodied fatal constitutional infirmities. The court quoted from *Cooley v. Stone*, 134 U.S.App.D.C. 317, 414 F.2d 1213 (1969), to the effect that the Fourth Amendment's prohibition on penal custody without a prompt judicial determination of probable cause applies to adults and juveniles alike. As an alternative rationale the court found that "the classical principles of procedural due process of law" dictate a similar result, saying: "[D]ue process of law requires at a minimum that a showing of probable cause be made by competent, sworn testimony, and that witnesses be subject to cross-examination."

Some months after the District Court's order was entered, the Supreme Court handed down a ruling affirming in part and reversing in part our decision in *Pugh v. Rainwater*, 483 F.2d 778 (CA5, 1973), on which the District Court had relied. In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Court had before it a class action brought on behalf of persons in Florida arrested and detained under a prosecutor's information. The Court held that Florida's failure to accord the plaintiffs a probable cause determination by a magistrate, and not just by a prosecutor, violated the Fourth Amendment. The Court was explicit in maintaining that the Fourth Amendment rather than the procedural due process guarantees of the Fourteenth controlled the case. Denying that due process cases such as *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), and *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), were relevant, the Court noted:

> The historical basis of the probable cause requirement is quite different from the relatively recent application of variable procedural due process in debtor-creditor disputes and termination of government-created benefits. The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the "process that is due" for seizures of person or property in criminal cases, including the detention of suspects pending trial. . . . Moreover, the Fourth Amendment probable cause determination is in fact

only the *first* stage of an elaborate system, unique in jurisprudence, designed to safeguard the rights of those accused of criminal conduct.

420 U.S. at 125 n. 27, 95 S.Ct. at 869, 43 L.Ed.2d at 72 n. 27.

■ Upon examining the judgment below in light of *Gerstein v. Pugh,* our proper course is clear. First, we affirm the District Court's opinion insofar as it discerned a Fourth Amendment violation in Florida's current juvenile justice system. A finding of probable cause—i. e., of "facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense,'" *Gerstein, supra,* 420 U.S. at 111, 95 S.Ct. at 862, 43 L.Ed.2d at 64—is central to the Amendment's protections against official abuse of power. Pretrial detention is an onerous experience, especially for juveniles, and the Constitution is affronted when this burden is imposed without adequate assurance that the accused has in fact committed the alleged crime. *Cooley v. Stone, supra.* This case presents none of the circumstances *Gerstein* described as temporarily suspending the Amendment's command. 420 U.S. at 113–14, 95 S.Ct. at 862–863, 43 L.Ed.2d at 65.

■ Attempting to distinguish away the Supreme Court's disapproval of analogous procedures for adults in the Dade County criminal justice system, the defendants invite us to test juvenile rights by a more flexible standard of "fundamental fairness," citing *McKeiver v. Pennsylvania,* 403 U.S. 528, 543, 91 S.Ct. 1976, 1985, 29 L.Ed.2d 647, 659 (1971). Assuming for argument's sake that fundamental fairness is the correct standard, Dade County's current procedures for pretrial detention of juveniles fail to pass muster. Florida may properly direct its juvenile court judges to make a decision about the child's welfare when they consider whether he should be released pending his adjudicatory hearing. But if they do not find release desirable on that basis, the Fourth Amendment's principles dictate that they must not detain him unless they also find probable cause to believe him guilty. These strong principles embedded in the Bill of Rights are not to be put aside merely because the pre-detention hearing is not formally viewed as part of a criminal case. Functionally it is similar.[1] And the Supreme Court has recently told us that

> determining the relevance of constitutional policies, like determining the applicability of juvenile rights, in juvenile proceedings, requires that courts eschew "the 'civil' label-of-convenience which has been attached to juvenile proceedings," . . . and that "the juvenile process . . . be candidly appraised."

*Breed v. Jones,* 421 U.S. 519, 529, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346, 355 (1975) (citations omitted).

■ The second point emerging from our reading of *Gerstein* is that the District Court erred in ordering that the finding of probable cause must be made on "competent, sworn testimony," with witnesses subject to cross-examination. Such requirements cannot be founded on the Fourteenth Amendment, for, as already noted, the Supreme Court has declined to employ due process analysis on this issue. Nor does the Fourth Amendment itself require adversary safeguards in the probable cause inquiry. As *Gerstein* pointed out, the standard of proof in a probable cause inquiry is low. There is no exacting insistence on certainty, as there is under a reasonable-doubt or even a preponderance standard. Accordingly, there is less need for the assurances of reliability that the adversary system provides. The Court also

---

1. As discussed by the District Court, 383 F.Supp. at 132–33, the pre-detention hearing is held only when a juvenile is taken into custody for an alleged violation of law. The court added, *id.* at 133: "Happily, however, if there is a danger to the community or to the juvenile, appropriate proceedings to declare a child 'dependent' or 'in need of supervision' are available in Florida's Juvenile Justice System *See* Fla.Stat.Ann. § 39.01(10) and (11)."

observed in *Gerstein* that the question of probable cause has for many years been resolved "in a nonadversary proceeding on hearsay and written testimony," usually in the context of a magistrate's decision whether or not to issue an arrest warrant. And, finally, the Court suggested that pretrial delay might be exacerbated by a holding that the Fourth Amendment requires adversary hearings in every case of pretrial detention. 420 U.S. at 120–22 & n. 23, 95 S.Ct. at 866–867, 43 L.Ed.2d at 69–70 & n. 23.

We know of no unique features of the juvenile courts by which *Gerstein's* reasoning could be distinguished. On the contrary, it is normally assumed that the distinctive advantages of juvenile tribunals derive from their informal nature. We are apprehensive that these advantages, to the extent that they now exist, might be lessened if juvenile proceedings were freighted with the requirements of trial-type procedures. We share the doubts of the four Justices in *McKeiver* who warned against subjecting the juvenile court system to "the traditional delay, the formality, and the clamor of the adversary system," 403 U.S. at 550, 91 S.Ct. 1988, 29 L.Ed.2d at 663 (plurality opinion); *see also id.* at 545, 91 S.Ct. at 1986, 29 L.Ed.2d at 661.

In the past the state public defender has been appointed to represent indigent juveniles, and the District Court specifically assumed in its decree that this practice would continue. Accordingly, we are not required to decide whether juveniles have a constitutional right to counsel at the pre-detention hearing. We note, however, that in *Gerstein* the Supreme Court decided that in Florida's adult criminal justice system "the probable cause determination is not a 'critical stage' in the prosecution that would require appointed counsel." 420 U.S. at 122, 95 S.Ct. at 867, 43 L.Ed.2d at 70. And, as we have concluded above, in a juvenile pre-detention hearing there is no guaranteed right to hear and cross-examine witnesses. Contrast *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (a juvenile court pro-

ceeding where delinquency is determined and commitment to an institution may result is a critical stage); *Kent v. U. S.,* 383 U.S. 541, 560–63, 86 S.Ct. 1045, 1056–1058, 16 L.Ed.2d 84, 97–98 (1966) (a juvenile court proceeding on the issue of whether it should waive jurisdiction is a critical stage).

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.