R.W.T., K.M.R., and T.S.C., minors, by and through their next friends and attorneys, Kenneth A. Cohn, Robert J. Goodwin, Michael L. Lyons, Jeanette Ganousis, David C. Howard, and Adrienne E. Volenik, on their own behalf and on behalf of all others similarly situated, Appellees,

v.

The Honorable Donald E. DALTON; The Honorable David Dalton; The Honorable Fred Rush; The Honorable Charles R. Schroeder; The Honorable William T. Lohmar; The Honorable Richard Zerr; and The Honorable Kathie Guyton, Appellants,

The Honorable Paul Williams; The Honorable Charles Schwendemann; The Honorable Peggy Coppage; The Honorable Donald Boehmer; Guy L. Koester, Sheriff; Cliston Hilton, Sheriff; Dave Jenkins, Sheriff; Raymond J. Grush, Juvenile Officer; and Gerald W. Paul, Deputy Juvenile Officer, Appellees.

R.W.T., K.M.R., and T.S.C., minors, by and through their next friends and attorneys, Kenneth A. Cohn, Robert J. Goodwin, Michael L. Lyons, Jeanette Ganousis, David C. Howard, and Adrienne E. Volenik, on their own behalf and on behalf of all others similarly situated, Appellants,

v.

The Honorable Donald E. DALTON; The Honorable David Dalton; The Honorable Fred Rush; The Honorable Charles R. Schroeder; The Honorable William T. Lohmar; The Honorable Richard Zerr; The Honorable Kathie Guyton; The Honorable Paul Williams; The Honorable Charles Schwendemann; The Honorable Peggy Coppage; The Honorable Donald Boehmer; Guy L. Koester, Sheriff; Cliston Hilton, Sheriff; Dave Jenkins, Sheriff; Raymond J. Grush, Juvenile Officer; and Gerald W. Paul, Deputy Juvenile Officer, Appellees.

Nos. 82–1745, 82–1793.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1983.

Decided July 11, 1983.

As Amended July 21, 1983.

Certiorari Denied Dec. 5, 1983.

See 104 S.Ct. 527.

See also 540 F.Supp. 772.

John Ashcroft, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, Mo., for appellants/cross-appellees.

David C. Howard, Adrienne E. Volenik, Howard & Volenik, St. Louis, Mo., Michael Ferry, Stanley J. Eichner, Legal Services of Eastern Missouri, Inc., St. Louis, Mo., for R.W.T., et al., appellees/cross-appellants.

Robert E. Edwards, Pros. Atty., Troy, Mo., for Cliston Hilton, Sheriff-appellees.

Thomas W. Dietrich, Pros. Atty., Bowling Green, Mo., for Paul E. Williams and Dave Jenkins, Sheriff-appellees.

* The Hon. Marion T. Bennett, United States Circuit Judge for the Federal Circuit, sitting by designation.

Before ARNOLD and BENNETT,* Circuit Judges, and HENLEY, Senior Circuit Judge.

ARNOLD, Circuit Judge.

In this case a class of juveniles allege that they were denied their constitutional rights when they were detained in Missouri county jails without being afforded probable-cause determinations. Plaintiffs, suing under 42 U.S.C. § 1983, claim that to jail a juvenile without a hearing on whether there is probable cause to believe that an act justifying imprisonment has been committed, is an unreasonable seizure of the person in violation of the Fourth and Fourteenth Amendments. The District Court[1] agreed, granted the plaintiffs declaratory and injunctive relief against various county and state officials, and awarded costs and attorneys' fees to the plaintiffs. The judges and associate judges of the Eleventh Judicial Circuit of the State of Missouri appeal, and the plaintiffs cross-appeal. On the merits of the principal questions presented, we agree with the District Court and affirm. We hold that juveniles are entitled to a probable-cause hearing before a neutral and detached magistrate, and that the District Court properly imposed upon the State of Missouri one-half the plaintiffs' attorneys' fees.

I.

The plaintiffs are a class of juveniles who have been, are, or may be detained in jails or detention centers by juvenile authorities of the Eleventh Judicial Circuit of the State of Missouri. The Eleventh Judicial Circuit contains St. Charles, Lincoln, and Pike Counties. The defendants include the judges and associate judges of the Eleventh Judicial Circuit; the judges of the County Court for St. Charles County, an administrative body under Missouri law; the sheriffs of St. Charles, Lincoln, and Pike Counties; and the juvenile officer and deputy juvenile officer of the Eleventh Judicial

1. The Hon. Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

Circuit. The plaintiffs sought declaratory and injunctive relief on two issues. The first issue concerned alleged unconstitutional conditions in the St. Charles, Pike, and Lincoln County jails, in which juveniles were confined. This issue was disposed of by a consent judgment entered July 31, 1980, which prohibited the defendants from incarcerating juveniles in the St. Charles or Pike County jails. The issue of jail conditions is no longer in dispute.

The second issue concerned the defendants' practice of detaining juveniles without affording them a preliminary hearing before a neutral and detached judicial officer to determine whether there was probable cause to believe that the juveniles had committed the acts with which they were charged. On October 14, 1980, the District Court granted summary judgment in favor of the plaintiffs on this issue, holding that the defendants' practice violated the plaintiffs' right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments.[2] On March 30, 1982, the District Court entered a final judgment, awarding costs of $4,162.30 and attorneys' fees of $34,815 to the plaintiffs. The Court directed the defendants to pay as follows:

> ½ from the State defendants (the judges and the juvenile officer of the Eleventh Judicial Circuit of Missouri, in their official capacities); ¼ from the St. Charles County defendants (the Sheriff and the county administrative court judges, all in their official capacities); and ⅛ each from the Lincoln County and Pike County defendants (the Sheriff of each county in his official capacity).

Designated Record (D.R.) 203.[3] The Court also directed the plaintiffs' attorneys to pay $872.75 for the attorneys' fees of defendant Gerald Paul, a former deputy juvenile officer of the Eleventh Judicial Circuit.

Seven of the judges and associate judges of the Eleventh Judicial Circuit (hereinafter "judges") appeal, contending that (1) juveniles who are detained for "status offenses" are not entitled to probable-cause hearings, (2) the prerequisites for injunctive relief were not met, (3) judges are immune from declaratory and injunctive relief under § 1983, and (4) the State of Missouri should not be required to pay one-half of the plaintiffs' attorneys' fees.

The plaintiffs cross-appeal, arguing that the District Court erred in (1) failing to award postjudgment interest on their award of attorneys' fees and costs and (2) awarding attorneys' fees in favor of defendant Gerald Paul against plaintiffs' counsel.

## II.

Under Missouri law, the juvenile court has jurisdiction over both children who are charged with violating the criminal law—delinquents—and children who are charged with committing noncriminal acts which are considered dangerous to the welfare of the juvenile or others—status offenders. The jurisdictional statute reads in pertinent part:

1. ... the juvenile court shall have exclusive original jurisdiction in proceedings:

\*     \*     \*     \*     \*     \*

(2) Involving any child ... who is alleged to be in need of care and treatment because:

(a) The child while subject to compulsory school attendance is repeatedly and without justification absent from school; or

(b) The child disobeys the reasonable and lawful directions of his parents or other custodian and is beyond their control; or

---

**2.** The District Court denied the plaintiffs' request that the probable-cause hearing be attended by full adversary safeguards such as appointment of counsel and cross-examination, citing *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and *Moss v. Weaver,*

525 F.2d 1258 (5th Cir.1976). The plaintiffs do not contest this ruling on appeal.

**3.** The Lincoln County Sheriff was later relieved of liability, and his share was divided between the St. Charles and Pike County defendants. D.R. 218–19.

(c) The child is habitually absent from his home without sufficient cause, permission, or justification; or

(d) The behavior or associations of the child are otherwise injurious to his welfare or to the welfare of others; or

(e) The child is charged with an offense not classified as criminal, or with an offense applicable only to children . . . .

(3) Involving any child who is alleged to have violated a state law or municipal ordinance . . . .

Mo.Ann.Stat. § 211.031 (Vernon 1983). It is important to note that each of the five categories listed in paragraph (2) turns on some past act on the part of the juvenile charged.

Both delinquents and status offenders may be taken into judicial custody by law-enforcement officers or by the juvenile officer. Mo.Sup.Ct.R. 111.01.[4] The juvenile officer has authority to authorize detention of the child for 48 hours. Mo.Sup.Ct.R. 111.-06(b). The juvenile can be detained for more than 48 hours only upon a court order to hold the juvenile for a detention hearing. Mo.Sup.Ct.R. 111.06(d). The detention hearing, at which the court determines "whether the juvenile is to be continued in detention or released," must be held within three days, excluding weekends and legal holidays, from the date of the court order. Mo.Sup.Ct.R. 111.07(b). At the hearing, "The court shall receive testimony and other evidence relevant only to the necessity for detention of the juvenile." Mo.Sup. Ct.R. 111.08(b). The court must release the child

unless the court finds that detention is required:

(1) to protect the juvenile; or

(2) to protect the person or property of others; or

(3) because the juvenile may flee or be removed from the jurisdiction of the courts; or

(4) because the juvenile has no custodian or suitable adult to provide care and supervision for the juvenile and return the juvenile to the court when required; or

(5) because the juvenile is a fugitive from another jurisdiction and an official of that jurisdiction has required the juvenile be detained pending return to that jurisdiction.

Mo.Sup.Ct.R. 111.08(d). As the Comment to the Rule emphasizes, "The detention hearing is to determine only whether a juvenile should be continued in detention, or released to his custodian." The rule requires no inquiry into whether there is probable cause to believe that the child has committed any particular past act. Sometime after the detention decision is made, the court holds a hearing on the merits of the charges against the juvenile and makes a disposition of the case. Mo.Sup.Ct.R. 119.01–.07.

The District Court found that although sometimes the juvenile judge made a probable-cause determination before or shortly after the juvenile was incarcerated,

this is mainly the product of the juvenile court judge's reliance on the representation of the juvenile officer. As such, even though a reasonable determination as to probable cause is made in some cases, no hearing is held before a neutral and detached judicial officer.

D.R. 147. This finding is clearly supported by the record. Judge David A. Dalton, who was currently serving as the juvenile court judge, testified:

Q Is there a separate probable cause hearing at all that's held for juveniles?

A For what purpose?

Q Simply to determine whether or not there is probable cause to believe that the youth committed the act?

A No. All the statute requires is that a petition be filed and if the petition is filed, there has been a determination of some probable cause prior to that time.

---

4. We set forth the procedure prescribed by the current Missouri Supreme Court Rules, which were amended to make detention hearings mandatory after January 1, 1982, over a year after the District Court rendered its decision. The amended rules are no more explicit with regard to the necessity for probable-cause hearings than were the former rules.

Q But is that a judicial determination or just a determination made by your staff?

A It's by the juvenile officer.

Deposition of Judge Dalton 15–16.

### III.

The judges concede that juveniles who are accused of committing acts which violate the criminal law are entitled to probable-cause determinations by a neutral and detached judicial officer. They argue that status offenders are not entitled to probable-cause determinations, that the relief granted by the District Court did not extend to status offenders, and that the plaintiffs had no standing to bring this suit.

### A.

■ We agree with the District Court that juveniles who are detained because they are suspected of committing criminal acts must be afforded a prompt probable-cause hearing.[5] In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Court held that the Fourth Amendment requires the State to "provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Id.* at 125, 95 S.Ct. at 868–869. Although *Pugh* involved only the right of adults to a probable-cause hearing, we believe that the right must be extended to juveniles as well.

In recent years the Supreme Court has recognized that "there is a gap between the originally benign conception of the [juvenile-court] system and its realities," *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975), and that juveniles are entitled to the " 'essentials of due process and fair treatment,' " *In re Gault,* 387 U.S. 1, 30, 87 S.Ct. 1428, 1445, 18 L.Ed.2d 527 (1967) (quoting *Kent v. United States,* 383 U.S. 541, 562, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966)). Accordingly,

the Court has held that a juvenile court must hold a hearing before it may waive jurisdiction and transfer a juvenile to criminal court, *Kent v. United States, supra;* that juveniles subject to delinquency adjudications must be accorded written notice, the right to counsel, the privilege against self-incrimination, and the right to confront and cross-examine witnesses, *In re Gault, supra;* that in delinquency adjudications, the government must prove beyond a reasonable doubt that the juvenile committed the criminal act, *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); and that double-jeopardy protections apply to juvenile adjudicatory proceedings, *Breed v. Jones, supra.* The Court has declined to extend only one procedural right to juvenile offenders—the right to a jury trial. In *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), the Court found that the benefits of a juvenile court's ability to function in a "unique manner" outweighed the fact-finding advantages of a jury trial. *Id.* at 547, 91 S.Ct. at 1987 (plurality opinion).

That requiring juvenile courts to hold probable-cause hearings will not impinge on their ability to function in a "unique manner" is evidenced by the number of decisions that have recognized that probable-cause hearings are fundamental to juveniles' rights to due process. *E.g., Moss v. Weaver,* 525 F.2d 1258 (5th Cir.1976); *Cox v. Turley,* 506 F.2d 1347 (6th Cir.1974); *Brown v. Fauntleroy,* 442 F.2d 838 (D.C.Cir. 1971); *Cooley v. Stone,* 414 F.2d 1213 (D.C. Cir.1969) (per curiam); *Osorio v. Rios,* 429 F.Supp. 570 (D.P.R.1976) (three-judge court); *Black Bonnet v. South Dakota,* 357 F.Supp. 889 (D.S.D.1973); *Baldwin v. Lewis,* 300 F.Supp. 1220 (E.D.Wis.1969), *rev'd on other grounds,* 442 F.2d 29 (7th Cir.1971); *Bell v. Superior Court,* 117 Ariz. 551, 574 P.2d 39 (Ct.App.1977); *T.K. v. State,* 126 Ga.App. 269, 190 S.E.2d 588 (1972) (by implication); *In re Joshua,* 327 So.2d 429 (La. App.1976); *People ex rel. Guggenheim v.*

---

**5.** Although the judges' counsel stated at oral argument that the District Court approved *ex parte* determinations of probable cause, the court's order makes clear that hearings are required. D.R. 144–45.

*Mucci,* 32 N.Y.2d 307, 298 N.E.2d 109, 344 N.Y.S.2d 944 (1973) (New York law); *In re Edwin R.,* 60 Misc.2d 355, 303 N.Y.S.2d 406 (Fam.Ct.1969); *In re Roberts,* 290 Or. 441, 622 P.2d 1094 (1981) (en banc).[6] Experts in the field also view probable-cause hearings as crucial to procedural fairness. *E.g.,* Juvenile Justice Standards Project, Institute of Judicial Administration-American Bar Association, *Standards Relating to Interim Status* § 7.6F, *Standards Relating to Pretrial Court Proceedings* §§ 4.1, 4.2 (1980); Paulsen & Whitebread, *Juvenile Law and Procedure* 120 (1974). The right not to be jailed for any substantial period of time without a neutral decision that there is probable cause is basic to a free society. Children should enjoy this right no less than adults.

### B.

Nevertheless, the state argues that juveniles who are detained for committing acts which, if they were adults, would not be criminal are not entitled to probable-cause hearings. Juvenile-court adjudications of status offenses are claimed to be essentially civil, not criminal.

We hold that juveniles who are detained for committing "status offenses," as that term is used by the parties in this case, are entitled to probable-cause hearings to the same extent as juveniles who are accused of committing criminal acts.

[D]etermining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew "the 'civil' label-of-convenience which has been attached to juvenile proceedings," *In re Gault, supra,* 387 U.S. at 50, 87 S.Ct. at 1455, and that "the juvenile process . . .

be candidly appraised." 387 U.S., at 21, 87 S.Ct., at 1440.

*Breed v. Jones, supra,* 421 U.S. at 529, 95 S.Ct. at 1785. It would be anomalous to afford less protection to children who are accused of acts, such as running away, truancy, and the like, which do not present an immediate threat to society, than to children who are accused of such criminal acts as murder, robbery, and rape.[7] In either case, the juvenile court may not proceed unless there is probable cause to believe that the child has committed a proscribed act. As a practical matter, both classes of juveniles are subject to the same pre-trial deprivation of liberty: both accused delinquents and accused status offenders may be put in jail pending a judicial hearing on the merits of their cases. In fact, under Missouri law, status offenders are treated the same as delinquents except for certain restrictions on "sentencing."[8]

### C.

The state goes on, however, to argue that the District Court ordered probable-cause hearings to be held only for accused delinquents, not for accused status offenders, and that since none of the named plaintiffs was detained for a delinquent act, none has standing to "seek relief on behalf of himself or any other member of the class," *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) (footnote and citations omitted).

▮ Initially, we observe that the question of standing depends on the nature of the relief sought, not on the nature of the relief granted. It is clear from the record that the plaintiffs sought probable-cause determinations for all juveniles, without regard to the reasons for their deten-

**6.** This Court has not previously decided the question. See *United States v. Allen,* 574 F.2d 435 (8th Cir.1978).

**7.** For purposes of this appeal, the category "status offenders" means juveniles accused of any of the specific past acts listed in Mo.Ann. Stat. § 211.031.1(2) (Vernon 1983), quoted *ante* at 6. Missouri juvenile courts also have jurisdiction over juveniles alleged to be in need of care and treatment because their parents are

neglecting them, or because they are otherwise without proper care, custody, or support. Mo. Ann.Stat. § 211.031.1(1) (Vernon 1983). This last-described class of juveniles is not involved in this case.

**8.** For example, status offenders cannot be committed to the Division of Youth Services for a first offense. Mo.Ann.Stat. § 211.181.2(2)(a) (Vernon 1983).

tion. Prior to the entry of the District Court's order and memorandum, the state never argued that status offenders should be treated differently from juveniles charged with violations of the criminal law. Rather, it argued "that if there is a constitutional right to a probable cause determination by a judicial officer *whenever a juvenile is detained* by an arm of the State of Missouri, the current state statutes, court rules, and juvenile court practices meet all the requirements of such a probable cause determination." D.R. 93 (emphasis added). Since the issue as framed by the parties concerned the rights of all juvenile detainees, we believe that the District Court's order has a similar scope. We see nothing improper in this. As we have noted, the distinction between status offenders and juveniles accused of crime is insignificant in terms of the requirement that a probable-cause determination be made. The District Court certified plaintiffs as proper representatives of a class composed of "all who have been, are now, or may be detained ... without a determination of probable cause ...." D.R. 6. Defendants do not complain on appeal about this certification. It is entirely proper for the named class representatives, whether they themselves are status offenders or not, to seek and obtain relief for the entire class.

### IV.

The parties devote much of their argument to the question whether judges acting in their judicial capacity are immune from declaratory and injunctive relief under 42 U.S.C. § 1983. Neither the Supreme Court nor this Court has decided the question. *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 735, 100 S.Ct. 1967,

1976, 64 L.Ed.2d 641 (1980); *e.g., Bonner v. Circuit Court of the City of St. Louis, Missouri,* 526 F.2d 1331, 1334 (8th Cir.1975) (en banc), *cert. denied,* 424 U.S. 946, 96 S.Ct. 1418, 47 L.Ed.2d 353 (1976).[9] Nor are we required to decide the issue now, because even if judges are not immune from prospective relief with respect to their judicial acts, we believe that such relief is inappropriate in this case.

### A.

In *In re Justices of the Supreme Court of Puerto Rico,* 695 F.2d 17 (1st Cir.1982), Judge Breyer cogently demonstrated that in most § 1983 cases, federal courts should refuse to grant relief against state judges. In the typical prospective assault on the constitutionality of a state statute, the state judge is not a proper party defendant under § 1983 because he has no stake in upholding the statute: he is not the plaintiff's adversary, and the complaint should be dismissed for failure to state a claim upon which relief can be granted.[10]  695 F.2d at 22.

> Judges sit as arbiters without a personal or institutional stake on either side of the constitutional controversy. They are sworn to uphold the Constitution of the United States. They will consider and decide a claim that a state or Commonwealth statute violates the federal Constitution without any interest beyond the merits of the case.

*Id.* at 21. In this sort of case, the plaintiff ordinarily should sue "the enforcement official authorized to bring suit under the statute; that individual's institutional obligations require him to defend the statute." *Id.* at 21–22.

---

9. Although this Court at one time seems to have taken contradictory positions on the issue, *compare Koen v. Long,* 428 F.2d 876 (8th Cir.1970), *aff'g per curiam* 302 F.Supp. 1383, 1389 (E.D.Mo.1969), *cert. denied,* 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 827 (1971) (indicating no immunity), *with Smallwood v. United States,* 486 F.2d 1407 (8th Cir.1973), *aff'g without opinion,* 358 F.Supp. 398, 403 (E.D.Mo. 1973) (*contra*), *and Tate v. Arnold,* 223 F.2d 782, 786 (8th Cir.1955) (same), we declared in *Bonner* that "[t]his circuit has never decided

whether those enjoying judicial immunity from damage suits are similarly immune from suits seeking equitable and injunctive relief." 526 F.2d at 1334. *Accord, Birch v. Mazander,* 678 F.2d 754, 756 (8th Cir.1982).

10. We expressly refrain, as did the court in *In re Justices,* from deciding that there is no "case or controversy" under Article III in this situation.

■ Although the plaintiffs here characterize their attack as one upon the court's "practice" rather than upon the constitutionality of the Missouri statutes or Supreme Court Rules, this distinction makes no difference to our analysis. The judges of the Eleventh Judicial Circuit, in the course of deciding juvenile cases, are interpreting Missouri law and the United States Constitution as requiring no probable-cause hearings for detained juveniles. The fact that we disagree with them does not make their determination any less an act of disinterested adjudication. Their position is no more adverse to that of the plaintiffs than the position of any judge who rules adversely on a point of law to any litigant. Thus, the judges were not proper defendants in this suit.

The First Circuit identified a second ground for a federal court to refrain from granting relief under § 1983 against state judges, one founded on comity. The point has been made elsewhere:

> Federal courts (except for the Supreme Court) are not superior to state courts, or higher in any theoretical order of precedence. Federal law is supreme and, if valid, supersedes state law no matter what court declares it. Federal law declared by a state court, for example, is supreme over state law declared by a federal court. It is not the forum that counts, but the law-making authority.

Arnold, *State Power to Enjoin Federal Court Proceedings,* 51 Va.L.Rev. 59, 71 (1965).

Making state judges defendants in a federal court unnecessarily undermines this cornerstone of our federal system. Accordingly, "[A] court should not enjoin judges from applying statutes when complete relief can be afforded by enjoining all other parties with the authority to seek relief under the statute." *In re Justices,* 695 F.2d at 23. *Accord, Lamb Enterprises, Inc. v. Kiroff,* 549 F.2d 1052, 1060 (6th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2926, 53

L.Ed.2d 1064 (1977) ("It was a violation of fundamental principles of State-federal relations for a federal judge to enjoin two State judges and their court personnel, when an injunction against the litigant would have accomplished the same purpose."); *Pollard v. Roberts,* 283 F.Supp. 248, 260 (E.D.Ark.1968) (three-judge court) (Henley, J., joined by Blackmun and Harris, JJ.).

Here, the plaintiffs' rights can apparently be fully vindicated by an injunction directed solely to the juvenile officer. Under the Rules of the Missouri Supreme Court, the juvenile officer is involved in decisions to detain or release juveniles. Even if there are cases in which the juvenile judge makes such a decision independently, we have no reason to doubt that the judges will comply with our holding that the Constitution requires probable-cause hearings.[11] "Indeed, it is ordinarily presumed that judges will comply with a declaration of a statute's unconstitutionality without further compulsion." *In re Justices,* 695 F.2d at 23. Thus, we reverse the District Court's grant of declaratory and injunctive relief against the state judges. If for some reason it turns out that juveniles continue to be held without probable-cause hearings, plaintiffs may apply to the District Court for further relief—an order, for example, that no state law-enforcement officer may detain any juvenile without a probable-cause hearing.

### B.

■ We reject the state's argument that the juvenile officer is immune from declaratory and injunctive relief. Although the juvenile officer may have limited immunity from liability for damages, see, *e.g., Atcherson v. Siebenmann,* 605 F.2d 1058, 1064 (8th Cir.1979), there is no reason to extend that immunity to liability for equitable relief. *Cf. Supreme Court of Virginia v. Consumers Union, supra,* 446 U.S. at 736–37, 100 S.Ct. at 1977–1978 (holding that prosecutors and law-enforcement personnel are subject

---

11. The State is free, of course, to seek review of our holding in the Supreme Court of the United States. If it does not do so, or if review is sought and denied, or if review is granted and our judgment affirmed, we assume that the State and its officials will accept our decision.

to suit for equitable relief). Moreover, the juvenile officer did not appeal; thus, he is not contesting the judgment against him.

█ The state also argues that injunctive relief is improper because the plaintiff class is not suffering irreparable injury. Juveniles detained without probable-cause hearings can get relief, we are told, either on habeas corpus or on petition for mandamus in a state appellate court. The difficulty (among others) with this argument is that both mandamus and habeas corpus come too late: a juvenile detained without a probable-cause hearing has *already* suffered irreparable injury. Complete relief must include an injunction forbidding all such unlawful detention in the future. The remedy of mandamus, moreover, would in any event lie only against the state judges, not the juvenile officer, and we are not granting an injunction against the judges.

Accordingly, we affirm the District Court's order insofar as it enjoins the juvenile officer from detaining a juvenile without a prompt probable-cause hearing.

### V.

█ We come at last to the order of the District Court holding the State of Missouri liable for one-half of the plaintiffs' attorneys' fees—and the fee question may be the real motivation for this appeal. The state argues that the District Court erred, but we are unpersuaded. There were two major issues in this case, jail conditions and probable-cause hearings. The District Court held, correctly, that the state was responsible for its officials' policy on probable-cause hearings, and it therefore required the state to pay half of the award of fees, imposing the other half on counties, which are responsible for jail conditions. Even though we are now vacating the equitable and declaratory relief granted against the judges, the plaintiffs are still prevailing parties, with respect to the probable-cause issue, against the juvenile officer, and the practice of juvenile officers to detain juveniles without probable-cause hearings is the responsibility of the state, not of any county. As a practical matter, the relief obtained by plaintiffs—a holding that probable-cause hearings are necessary, and an injunction against the juvenile officer—is just as effective as it would be if the relief against the judges were also being affirmed. Our holding that the judges should not have been enjoined, in other words, does not make the result of this case appreciably less favorable to the plaintiffs. We therefore approve the District Court's decision to impose one-half the attorneys' fees on the state. Both the judges and the juvenile officer were sued in their official capacities, and we were informed at the oral argument that the state recognizes its responsibility to pay any award of attorneys' fees imposed upon it in this case as a result of its officials' execution of state policies. There is no complaint on appeal that the amount of the fee award was excessive. The defendants were represented by a county prosecutor until after the entry of judgment in the District Court, and the state attorney general's office did not enter the case until that point, but that is not, in our opinion, a special circumstance that would render the award of fees against the state unjust.

### VI.

█ We reverse the District Court on two final issues dealing with attorneys' fees, both of which are raised by the plaintiffs' cross-appeal. First, the District Court should, in our view, have awarded interest on the plaintiffs' award of fees and costs from March 30, 1982, the date of that award. We agree with the Ninth Circuit's rationale in *Perkins v. Standard Oil Co.*, 487 F.2d 672 (9th Cir.1973):

In our view there exists no real distinction between judgments for attorneys' fees and judgments for other items of damages.... [O]nce a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed.

*Id.* at 675. *Accord, Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir. 1983) (en banc) (per curiam) (interest allowed automatically on attorneys' fees and costs). Any other rule would effectively

reduce the judgment for attorneys' fees and costs, because a certain sum of money paid at a certain time in the future is worth less than the same sum of money paid today. Failing to allow awards of attorneys' fees to bear interest would give parties against whom such awards have been entered an artificial and undesirable incentive to appeal or otherwise delay payment.

On remand, the District Court should amend its award to allow interest from and after March 30, 1982, until payment. The interest rate should be determined under 28 U.S.C.A. § 1961 (Supp.1983). This statute became effective on October 1, 1982, after the award of fees was made in this case, but it is the law now, and should be used by the District Court. *Cf., e.g., United States v. The Schooner Peggy,* 1 Cranch 103, 110, 2 L.Ed. 49 (1801).

■ Second, we disagree with the District Court's award of attorneys' fees to the defendant Gerald Paul[12] and against the plaintiffs' counsel. The court made no finding "that the [plaintiffs'] action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). Such a finding is a prerequisite for an award of attorneys' fees against a plaintiff in a civil-rights action.

### VII.

In conclusion, the District Court's declaration that probable-cause hearings are required, both for juveniles accused of criminal acts and for "status offenders" as we have used that term in this opinion, is affirmed, as is its injunction against the juvenile officer in this case. The imposition of one-half of the plaintiffs' attorneys' fees on the State of Missouri is also affirmed. The grant of equitable and declaratory relief against the state judges is reversed, as is the denial of interest on the fee award made to plaintiffs, and the award of fees to defendant Paul. The cause is remanded with directions to amend the award of fees

and costs to provide for the running of interest in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.

---

12. The parties dismissed the action against Paul in his individual capacity by stipulation, and, by the time the magistrate, to whom the matter of fees had been referred, had prepared his report and recommendation, Paul was no longer a deputy juvenile officer. D.R. 18, 194.