889 F.Supp. 1495 (1995)
A.M., a minor, By and Through his next friend and Guardian ad Litem, Charles M. LAW, Plaintiff,
v.
Robert GRANT, et al., Defendants.
No. CV-94-A-324-N.
United States District Court, M.D. Alabama, Northern Division.
June 21, 1995.
*1496 *1497 *1498 Robert Dean Drummond, Jr., Edwin Leo Yates, Montgomery, AL, for plaintiff.
Mark S. Boardman, Boardman & Tyra, P.C., Birmingham, AL, Perryn G. Carroll, Carroll & Carroll, P.C., Birmingham, AL, for Robert Grant, Annie C. Hunter, Ben Davis, Steven T. Foster, Robert A. Lang, Eli Seaborn, Theresa Douglas, Jessica Jenkins.
Daryl L. Masters, Kendrick E. Webb, Kelly Gallops Davidson, Webb & Eley, P.C., Montgomery, AL, for Willie Vaughner.
E. Wray Smith, Montgomery, AL, for Mary Smith, Probation Officer for Lowndes County.

MEMORANDUM OPINION & ORDER
ALBRITTON, District Judge.

I. INTRODUCTION
This cause is now before the court on the Motion for Summary Judgment filed by defendant, Mary Smith ("Smith") on March 27, 1995.
On March 15, 1994, the Plaintiff, a minor hereinafter referred to as "AM,"[1] filed a complaint pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. AM amended this complaint on December 19, 1994. AM alleges that he has been harmed as a consequence of his illegal incarceration in the Lowndes County Jail. AM further alleges that this incarceration resulted from actions taken under color of state law by the named defendant.
In his amended complaint, AM named the following individuals as defendants: Robert Grant, Annie C. Hunter, Ben Davis, Steven T. Foster, Robert A. Lang, Eli Seaborn, Theresa Douglas ("Douglas"), Jessica[2] Jenkins ("Jenkins"), Willie Vaughner ("Vaughner") and Mary Smith ("Smith"). All of the aforementioned defendants are sued in both their individual and their official capacities. On February 17, 1995, this court entered an order granting summary judgment to all defendants but Smith[3] on the federal causes of action and dismissing all pendant state law claims against all defendants.[4] Thus, the only claims before this court at this time are AM's federal law claims against Smith in her official and her individual capacities.[5]
AM's amended complaint specifies the following violations of AM's rights which were allegedly the consequence of actions taken by Smith: AM was subjected to cruel and unusual punishment; AM was deprived of his constitutional right to liberty without due process of law; AM was deprived of equal protection under the law; AM was denied equal privileges and immunities; AM was deprived of a state statutory right not to be placed in an adult jail; and AM was denied his right to an education. AM seeks the following relief: permission to proceed under a fictitious name, injunctive relief, compensatory and punitive damages, attorneys' fees and costs.
For the reasons stated below, the court finds that Smith's Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

II. FACTS
The court has carefully considered all deposition excerpts, affidavits, and documents submitted in support of and in opposition to the Motion for Summary Judgment. The *1499 submissions, viewed in the light most favorable to the non-moving party, establish the following facts:
AM is a minor who resides in Lowndes County, Alabama. In January 1994, AM attended school at Hayneville Middle School. Due to behavior problems in the Hayneville Middle School, AM began attending a special program within the Lowndes County Public School System known as the Alternative School. While a student in the Alternative School, AM violated Alternative School rules. As punishment for this violation of the rules of the Alternative School, Jenkins, AM's teacher, drove AM to the Lowndes County Juvenile Detention Facility and AM stayed there in a cell between the hours of 7:30 a.m. and 2:30 p.m. on three days in late January. Jenkins also took AM to the Lowndes County Juvenile Detention facility on February 7, 1994. AM testified at his deposition that he was actually detained at the facility for five days.[6] (AM Dep. at pp. 85, 136, 137). This detention is at the heart of this lawsuit.
Jenkins first took AM to the Lowndes County Juvenile Detention Facility on January 27, 1994. (Jenkins Dep. at 36). Prior to leaving for the Juvenile Detention Facility, Jenkins called Smith, the Lowndes County Juvenile Probation Officer. (Jenkins Dep. at 39). Smith authorized the detention. Jenkins testified at his deposition that Smith requested Jenkins pick AM up in the afternoon in time for AM to catch his bus home. (Jenkins Dep. at 41-42). In the afternoon, Jenkins picked AM up from the Juvenile Detention Facility and took him to his bus. (Jenkins Dep. at 42). Jenkins took AM to the Juvenile Detention Facility on January 28 and 31, 1994. (Jenkins Dep. at 44). Additionally, Jenkins decided that AM would spend February 7, 1994, at the detention facility. (Jenkins Dep. at 66). Jenkins again drove AM to the detention facility and picked him up at the end of the day. (Jenkins Dep. at 65). Jenkins did not notify Douglas or Smith prior to taking AM to the detention facility on February 7, 1994. (Jenkins Dep. at 67).
At his deposition, Jenkins testified that it was not a school practice or policy to use detention in the Juvenile Detention Facility as a remedy for violations of the Alternative School's rules. (Jenkins Dep. at 32). Jenkins thought that this punishment would be an appropriate alternative to the officially sanctioned punishments because it gave "an individual a chance to just sit down by himself and think and get himself together." (Jenkins Dep. at 32). Jenkins testified at his deposition that AM's grandmother had requested that AM go to detention. (Jenkins Dep. at 33). Jenkins stated that AM had been in the Alternative School several times during the school year and had a history of disregarding the rules. (Jenkins Dep. at 32).
Smith has worked for Lowndes County for over seventeen years. (Smith Dep. at 6). She is presently employed by the Lowndes County Board of Commissioners as the county's only juvenile probation officer. (Smith Dep. at 6). Smith admits that some people refer to her as the Chief Juvenile Probation Officer. (Smith Dep. at 6). Smith indicated that she serves at the pleasure of the Lowndes County District Court judge. (Smith Dep. at 7). Smith characterizes her responsibilities as including court investigations and supervision of juveniles who are in custody at the juvenile detention facility or who have court appearances. (Smith Dep. at 6-7). Her responsibilities also include scheduling court appearances for juveniles and supervising the release of juveniles from the juvenile detention facility. (Smith Dep. at 7). When asked at her deposition the specific nature of her supervision duties, Smith indicated that the supervision included "whether or not a child should be detained" and "to see that all his needs are met while he is in detention." (Smith Dep. at 8).
Smith indicated that a manual called the "Lowndes County Juvenile Detention Manual"[7] outlined the county's policies concerning *1500 the admission of juveniles to the detention facility. (Smith Dep. at 20). Smith explained that one of the first requirements is that either Smith or the judge be contacted and that a petition should be filed. (Smith Dep. at 20). Once Smith or the judge is contacted, either of them can say whether or not to retain the child. (Smith Dep. at 21, 39).
According to Smith, she is aware that AM was in the Lowndes County Juvenile Detention Center, but she believed that it was only for a few hours on one day. (Smith Dep. at 40). Smith explained that some weeks prior to the date of AM's detention his grandmother had called Smith and said that she needed some help in controlling him because he was behaving in a fashion that was out of hand, refusing to obey, and giving his teacher fits. (Smith Dep. at 44). Smith told AM's grandmother that she needed to come in and file a petition, but the grandmother did not do so. (Smith Dep. at 44).
Smith testified at her deposition that on the day AM was detained Jenkins called her and told her that AM was out of control, that AM had struck a teacher, and that AM's grandmother had said if anything like that happened again that Smith should be contacted. (Smith Dep. at 41). Upon hearing this, Smith anticipated that criminal charges would be made, and she decided that AM could be put in the detention center. (Smith Dep. at 41-43). Smith testified at her deposition that she only authorized a detention of a couple hours. (Smith Dep. at 40). Jenkins stated that he told Smith that he was planning to take AM to the detention facility for three or four days and Smith said that this was okay. (Jenkins Dep. at 41-42). Smith attempted to contact AM's grandmother minutes after Jenkins called, but she did not reach her. (Smith Dep. at 56).
At some time later that day, Johnnie Mae King ("King") called Smith and indicated that AM was at the juvenile detention facility. (Smith Dep. at 40). King asked Smith for permission to detain him. (Smith Dep. at 40). Smith explained why AM was there by indicating that AM was out of control and had hit a teacher and needed to cool down. (Smith Dep. at 40). Smith gave King permission to detain AM for a couple of hours. (Smith Dep. at 40). Smith told King that AM could be released when Jenkins returned to pick him up. (Smith Dep. at 87). Smith acknowledged that it was not standard procedure to detain AM in anticipation of a petition being filed, but she authorized such a detention anyway because she thought it was in his best interests to remove him from the situation and allow him to cool down for awhile. (Smith Dep. at 45).
AM was detained in a cell at the juvenile detention center. While there, he was provided lunch each day. (AM Dep. at 86). He was also expected to complete certain school assignments. (AM Dep. at 90).

III. SUMMARY JUDGMENT STANDARD
Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-23, 106 S.Ct. at 2552-53.
Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the `depositions, answers to interrogatories, and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. at 2553. To avoid summary judgment, *1501 the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986).
After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See, Fed.R.Civ.P. 56(c).

IV. DISCUSSION

A. Claims under 42 U.S.C. § 1985 & § 1986
As a preliminary matter, the court notes that AM concedes that summary judgment is due to be GRANTED in Smith's favor on all claims pursuant to 42 U.S.C. §§ 1985 and 1986 in AM's amended complaint. Thus, the court will grant Smith's Motion for Summary Judgment as it applies to these claims and dismiss these claims. This leaves at issue AM's claims against Smith in her individual and her official capacities under 42 U.S.C. § 1983.

B. Claims under 42 U.S.C. § 1983

1. General Requirements for Claims under Section 1983
AM seeks relief pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action for persons whose rights under the federal constitution or laws have been violated under color of state law. See 42 U.S.C. § 1983. In order to establish a claim under Section 1983, AM must prove that Smith acted under the cloak of state authority when she took the alleged actions against AM and that the actions deprived AM of a right or rights secured by the Constitution of the United States or by other federal law. The court notes that neither state statutory violations nor state torts create the kind of injury for which Section 1983 provides a remedy.
Section 1983 is not a source of rights, rather it is a means of vindicating federal rights. Albright v. Oliver, ___ U.S. ___, ___, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). When a court begins to analyze a Section 1983 claim, it must first "identify the specific constitutional right allegedly infringed." Id. Whether a constitutional violation has occurred can only be determined by applying the standards applicable to that particular constitutional provision. See, Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989). AM's complaint identifies the rights which he believes were infringed by the defendants' actions: 1) the Eighth Amendment prohibition on cruel and unusual punishment, and 2) a Due Process protection from placement in Juvenile Detention without a hearing.

2. Official Capacity Claims
The claim against Smith in her official capacity is really a suit against the entity of which the named defendant is an agent. See, Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104-05, 87 L.Ed.2d 114 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. at 166, 105 S.Ct. at 3105. The real party in interest in such suits is the entity itself, and the entity, not the named defendant, will be liable for any damages. Id. Qualified immunity and absolute prosecutorial immunity are unavailable to defendants named in their official capacities. Id. at 166-67, 105 S.Ct. at 3105-06. "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment." Id. at 167, 105 S.Ct. at 3106.
With these principals in mind, the court will first address Smith's arguments raised in support of immunity from suit in support of her Motion for Summary Judgment on AM's claims against her in her official capacity under Section 1983. The court will then *1502 discuss whether plaintiff has created a genuine issue of material fact sufficient to send to trial any such claims for which Smith lacks immunity.

a. Eleventh Amendment Immunity
Smith contends that she is a state official and the Eleventh Amendment prohibits this court from exercising jurisdiction over claims against her in her official capacity. AM contends the Eleventh Amendment does not bar his claims against Smith in her official capacity. The key dispute between the parties on the Eleventh Amendment issue is whether the Chief Juvenile Probation Officer of Lowndes County is a state agent.
The Eleventh Amendment provides that
[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state.
U.S. Const. amend. XI. The Eleventh Amendment deals only with a federal court's jurisdiction to hear suits against the state, not with the state's immunity from suit in any forum. Hufford v. Rodgers, 912 F.2d 1338, 1340-41 (11th Cir.1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991).
The Eleventh Amendment insulates a state from private parties seeking to impose a liability in federal court which must be paid from public funds in the state treasury. See, Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974). This rule applies whether the plaintiff brings an action for damages against a state, a state agency or instrumentality, or a state official. Id. Thus, the Eleventh Amendment bars suits for damages against state officials acting in their official capacity when the state is the real party in interest. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 908-09, 79 L.Ed.2d 67 (1984) In instances where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity, a federal court may hear the case without running afoul of the Eleventh Amendment. See, Pennhurst, 465 U.S. at 98-100, 104 S.Ct. at 906-08; Quern v. Jordan, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979).
A court faced with a claim of Eleventh Amendment immunity must first determine whether the plaintiff is suing the state. This often involves deciding whether the entity or individual raising the defense can be considered an "agency or instrumentality" of the state. State law guides this determination. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 572-73, 50 L.Ed.2d 471 (1977); Sessions v. Rusk State Hosp., 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981).[8] The Eleventh Circuit has highlighted four aspects of state law which are especially pertinent to this determination: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where funds for the entity are derived; and (4) who is responsible for a judgment entered against the entity. Hufford, 912 F.2d at 1341.
Neither party has presented this court with any evidence of how Alabama law defines a juvenile probation officer. The court has not been able to find any authority that defines a juvenile probation officer as either a county or a state official.
The only evidence of any state control over county juvenile probation officers is that a state agency sets minimum standards for the position. By law, the Department of Youth Services establishes and promulgates reasonable minimum standards for certification of juvenile probation officers. Ala.Code § 44-1-26(b) (1975). The court notes that aside from certification the state does not regulate the county juvenile probation officer's conduct. Although a state statute section does map out the responsibilities of a juvenile probation officer, there is no law that suggests that the state monitors or directs the actions of juvenile probation officers. Ala. Code § 12-15-7 (1975). It could be inferred that the absence of state law codifying control *1503 over juvenile probation officers indicates a delegation of such control to counties. In fact, such a conclusion is supported by a careful reading of the very section of the Code of Alabama which empowers the Department of Youth Services to set minimum standards for juvenile probation services. The statute provides in pertinent part that
the department shall provide consultation upon request by the juvenile court judges and staffs of the county administered programs as to the standards for probation and aftercare services and shall conduct in-service training to aid in the development of services which are in accord with the standards.
Ala.Code § 44-1-27(c) (1975) (emphasis added). This inference is further supported by the undisputed testimony from Smith that she considers herself an employee not of the state of Alabama, but rather of the Lowndes County Board of Commissioners. (Smith Dep. at 5-6). Thus, this court finds that the county, not the state, has control over county juvenile probation officers.
Funding for Smith's salary as a juvenile probation officer comes from a combination of state and county funds. The Alabama Code specifies that "[t]he Department of Youth Services shall provide salary subsidies for probation services to all Alabama counties." Ala.Code § 44-1-26(a) (1975). The statute further provides that the salary rates and ranges for juvenile probation officers shall be established by county personnel boards, county commissions, or any other local entities. Ala.Code § 44-1-26(a)(2) (1975). Finally, the court cannot ascertain whether the state or the county would be liable to pay any judgment that might be obtained against Smith in her official capacity.
The court concludes that AM's claims against Smith in her official capacity seek to recover against her in her capacity as an agent or instrumentality of Lowndes County. The State of Alabama is not the real party in interest in this suit. Smith's Motion for Summary Judgment is due to be DENIED to the extent that it rests on Eleventh Amendment immunity.

b. Absolute Judicial Immunity
Smith argues that she is entitled to the protection of absolute judicial immunity for her actions. She bases this argument on cases which hold that a probation officer is entitled to absolute immunity when preparing and submitting a presentence report in a criminal case. See Hughes v. Chesser, 731 F.2d 1489, 1490 (11th Cir.1984) (state probation officers enjoy immunity to the same extent as would a federal probation officer); Spaulding v. Nielsen, 599 F.2d 728, 729 (5th Cir.1979) (federal probation officers enjoy absolute judicial immunity from damage suits for preparing and submitting a presentence report in a criminal case).
The cases on which Smith rests her claim to judicial immunity do not authorize this court to immunize Smith for actions that she took which caused AM to be detained. The problem with Smith's argument is that this case does not involve the preparation and submission of a presentence report. The aforementioned cases are expressly limited to that narrow factual setting. In fact, the Spaulding opinion contains the following caution, "[w]e have no occasion to decide today, and do not decide, whether immunity will shield probation officers from civil liability for official activities apart from the presentence report process." Spaulding, 599 F.2d at 729 n. 2.
In addition to the express limitation of the application of the rule in Spaulding, the court notes that the Fifth Circuit has subsequently held that a state probation officer who mistakenly causes the arrest and incarceration of a person on probation, may not claim absolute immunity from a Section 1983 damage suit although he may avail himself of the protection of qualified immunity in certain cases. See Galvan v. Garmon, 710 F.2d 214, 215-216 (5th Cir.1983), cert. denied, 466 U.S. 949, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984) (distinguishing Spaulding). The court finds that the Eleventh Circuit may interpret Spaulding in a similar fashion as the Fifth Circuit has when the issue reaches it.
In light of the absence of binding authority that would suggest that a probation officer, who is performing tasks such as the ones *1504 allegedly performed by Smith in this case, is protected by absolute judicial immunity, this court finds that Smith is not able to avail herself of the protection of that type of immunity. Contrary to Smith's contentions, the court is skeptical that Smith's decision to admit AM in the circumstances was either intimately associated with the judicial phase of the criminal process or performed at the behest of a state court judge. These facts makes this case distinguishable from Spaulding, and consequently, judicial immunity is not appropriate. Thus, to the extent that Smith bases her Motion for Summary Judgment on a claimed entitlement to the protection of judicial immunity, it is due to be DENIED.

c. Official Policy or Custom
The court finds without merit Smith's final argument in support of her Motion for Summary Judgment on AM's claims against her in her official capacity because it finds that there exists sufficient evidence of an official policy or custom that caused the alleged violation of AM's federally protected rights. While local government bodies such as school boards, counties, and municipalities are persons within the meaning of Section 1983 and can be held accountable for deprivations of federally protected rights, it is not a respondent superior theory on which liability rests. Oklahoma City v. Tuttle, 471 U.S. 808, 817-18, 105 S.Ct. 2427, 2432-33, 85 L.Ed.2d 791 (1985). Vicarious liability does not operate in Section 1983 suits. Instead,
[l]ocal governments are directly liable under § 1983 ... for constitutional deprivations resulting from (1) an unconstitutional action taken pursuant to an officially promulgated policy statement, decision, regulation or ordinance; or (2) governmental custom, even though not authorized by written law.
Martinez v. City of Opa-Locka, Fla., 971 F.2d 708, 713 (11th Cir.1992) (citing Monell v. Department of Social Services, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978)).
The Eleventh Circuit has recognized that "a single decision by an official policy maker can establish the existence of an unconstitutional municipal policy." Martinez at 713. The Eleventh Circuit explains that under City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 125, 108 S.Ct. 915, 925, 99 L.Ed.2d 107 (1988), the following principles guide a court's evaluation of whether a decision of a single official is sufficient to give rise to municipal liability:
(1) Municipalities have section 1983 liability only for acts officially sanctioned or ordered by the municipality.
(2) Only those municipal officers who have `final policy making authority' may subject the municipality to section 1983 liability for their actions.
(3) The determination of whether or not a particular official has `final policy-making authority' is governed by state law, including valid local ordinances and regulations.
(4) The challenged action must have been taken pursuant to a policy adopted by the official or officials responsible for making policy in that particular area of the city's business, as determined by state law.
Martinez at 713. (citations omitted).
Local governments can be held liable for the acts of employees which have deprived a plaintiff of federally protected rights only if the plaintiff can establish that his injuries were caused by actions taken by the employees pursuant to an official policy or custom of the governmental entity. City of Canton, Ohio v. Harris, 489 U.S. 378, 389-92, 109 S.Ct. 1197, 1205-07, 103 L.Ed.2d 412 (1989). To hold the governmental entity liable for the alleged constitutional deprivations by its employees, a plaintiff must prove that an official policy or custom of the governmental entity was the moving force behind the deprivations. Farred v. Hicks, 915 F.2d 1530, 1532-33 (11th Cir.1990). These cases define the availability of Section 1983 suits against various defendants. A plaintiff seeking to avail himself of the remedy provided by Section 1983 must do so within the parameters set out by these cases.

Evidence of Official Policy or Custom
The policy of the Lowndes County Jail requires the officer on duty when a minor comes to the facility to contact District Court *1505 Judge Bozeman or Smith, the Juvenile Probation Officer. (Ptf. Ex. 2 in Opposition to Vaughner's Motion for Summary Judgment at p. 5).[9] If the Judge or the Juvenile Probation Officer gives either a verbal or a written authorization, the juvenile can be accepted into the Juvenile Detention Center. (Vaughner Dep. at 67). As explained in greater detail later in this opinion, it seems that this county policy may not be in accordance with state law. Nevertheless, this is the official policy of Lowndes County and if it caused a deprivation of AM's rights then the county can be held accountable for it. It is undisputed that on the first day that Jenkins took AM to the Juvenile Detention Facility this policy was followed and that Smith gave verbal authorization for the admission of AM into the Juvenile Detention Facility. (Vaughner Dep. at p. 67; King Dep. at 63-65; Smith Dep. at 40-41).

Constitutional Deprivations

Eighth Amendment
AM cannot prove his claim that the official policies and customs of Lowndes County deprived him of rights protected by the Eighth Amendment. The Eighth Amendment prohibition against "cruel and unusual" punishment mandates that those who are incarcerated after criminal conviction must not be subjected to punishment that involves "the unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). However, Eighth Amendment protections do not extend to pretrial detainees. As the Supreme Court explained
Eighth Amendment scrutiny is appropriate only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions. ... the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.
Ingraham v. Wright, 430 U.S. 651, 671-72 n. 40, 97 S.Ct. 1401, 1412-13 n. 40, 51 L.Ed.2d 711 (1977) (internal citations omitted). Accord, Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1185-86 n. 19 (11th Cir.1994). It is undisputed that AM, who was detained without an adjudication, is not able to bring suit under Section 1983 for violations of the Eighth Amendment. Any rights which may have been violated by the events in this case are not Eighth Amendment rights; rather, they are Due Process rights. Smith's Motion for Summary Judgment is due to be GRANTED to the extent that it applies to AM's claims for violations of his rights under the Eighth Amendment.

Fourth Amendment
The Lowndes County policy and custom of allowing Smith, acting as juvenile probation officer, to authorize the detention of juveniles in the juvenile detention center caused AM to be detained in a manner inconsistent with the dictates of the Fourth Amendment and the Fourteenth Amendment Due Process Clause. Alabama law carefully outlines the proper legal procedures for detaining a juvenile. It seems these procedures were not implemented here because Smith was endowed by county policy and custom with the unchecked power to incarcerate a juvenile when she felt it was appropriate without a preliminary adjudication of delinquency or a determination of probable cause. The nature of the constitutional violation is outlined in greater detail later in this opinion. The relevant inquiry here is whether the county policy or custom caused the alleged violation and the court is satisfied that the evidence supports such a conclusion. Smith is not entitled to summary judgment on AM's claims against her in her official capacity for due process violations.

3. Individual Capacity Claims & Qualified Immunity
In addition to the aforementioned claims against Smith in her official capacity, AM brings suit under Section 1983 against Smith in her individual capacity. Smith urges this court to grant her summary judgment on the claims against her in her individual capacity *1506 on the basis of the qualified immunity defense.

a. Qualified Immunity Framework
Qualified immunity may be claimed by an individual defendant who is being sued personally for actions that he or she took while acting under color of state law. Ansley v. Heinrich, 925 F.2d 1339, 1344 (11th Cir.1991). Qualified immunity is a question of law to be decided by the court prior to trial.
Qualified immunity is designed to allow officials who are entitled to qualified immunity to avoid the expense and disruption of going to trial, and is not merely a defense to liability. Ansley, 925 F.2d at 1345. As the Eleventh Circuit, recently explained,
[t]hat qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities. Unless a government agent's act is so obviously wrong, in the light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. Because qualified immunity shields government actors in all but the exceptional cases, courts should think long and hard before stripping defendants of immunity.
Lassiter v. Alabama A & M Univ. Board of Trustees, 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (citations omitted).
The Supreme Court established a qualified immunity analysis which examines the objective reasonableness of the actions of the state official. Harlow v. Fitzgerald, 457 U.S. 800, 815-19, 102 S.Ct. 2727, 2736-39, 73 L.Ed.2d 396 (1982). Under this test, public officials performing discretionary functions which would objectively appear to be within the official's authority have qualified immunity if their challenged conduct did not violate a clearly established constitutional right of which a reasonable person would have known, given the circumstances and information possessed by the official at the time of the conduct. Id. at 818, 102 S.Ct. at 2738.
The objective-reasonableness test is a two part analysis. First, the defendant public official must prove that he was performing duties within the scope of his discretionary authority when the alleged violation occurred. Hutton v. Strickland, 919 F.2d 1531, 1537 (11th Cir.1990) (citations omitted). A government official may prove that he was acting within the scope of his authority by showing facts and circumstances that would indicate that his actions were part of his normal job duties and within the scope of authority delegated to him by his employer. See, e.g., Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir.1988) (government official can show prove that he acted within the scope of his discretionary authority by showing "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority."); Cronen v. Texas Dep't of Human Services, 977 F.2d 934, 939 (5th Cir.1992) ("An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity.")
Once the defendant proves that he was acting within his discretionary authority, the burden then shifts to the plaintiff to prove that the defendant did not act in good faith. Hutton, 919 F.2d at 1537. The plaintiff may meet this burden by establishing that "the defendant public official's actions `violated clearly established constitutional law.'" Id. (citations omitted). The second prong of the objective-reasonableness test has two subparts. Id. at 1538.
First, the court must find that the constitutional law in question was clearly established when the alleged violation occurred. Id. Second, the court must find that "there is a genuine issue of fact regarding the government official's engaging in conduct violative of the clearly established law." Id. "Clearly established" means that "[t]he contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

*1507 This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the pre-existing law the unlawfulness must be apparent.
Id. (citations omitted). The Eleventh Circuit recently explained that
[f]or the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that `what he is doing' violates federal law. Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases.
Lassiter, 28 F.3d at 1149-50 (citations omitted). Accord, Barts v. Joyner, 865 F.2d 1187, 1190 (11th Cir.1989), cert. denied, 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989) (quoting Mitchell v. Forsyth, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)) ("To defeat a qualified immunity defense, the plaintiff bears the burden of showing that the `legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, ... the law clearly proscribed the actions the defendant took.'")
The Eleventh Circuit has said that the "most common error" it encounters as a reviewing court occurs when courts "permit plaintiffs to discharge their burden by referring to general rules and to the violation of abstract `rights.'" Lassiter, 28 F.3d at 1150 (citations omitted). Clearly, it is the law of this circuit that
[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances.
Id.
If the plaintiff satisfies his initial burden and shows that the rights that defendant's conduct allegedly violated were clearly established at the time of defendant's conduct, the court must then determine whether the plaintiff has adduced evidence sufficient to create a genuine issue of fact as to whether defendant actually engaged in conduct that violated clearly established law. Rich, 841 F.2d at 1564. See also Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499, 1503 (11th Cir.1990). In this undertaking, the court must draw all inferences of fact in favor of the plaintiff when the plaintiff is the party opposing the motion. Stewart, 908 F.2d at 1503.

b. Discretionary Authority
AM contends that Smith is not entitled to the protection of qualified immunity because she did not act within the scope of her discretionary authority when the alleged violation of AM's federally protected rights occurred. AM correctly notes that if Smith cannot show objective circumstances which would indicate that her actions were part of her normal job duties and in accordance with the scope of her authority she cannot avail herself of the protection of qualified immunity. AM argues that Smith's decision to admit AM to detention was not part of her normal job duties and that this decision was not in accordance with those duties or within the scope of the authority delegated to Smith. This court must now determine whether Smith was acting within her discretionary authority by discerning whether her acts were undertaken pursuant to the performance of her duties and within the scope of her authority.
The Eleventh Circuit has recently issued a decision that clarifies the nature of this court's inquiry into whether Smith was acting within the scope of her authority under Alabama law when she authorized AM's detention. In Lenz v. Winburn, 51 F.3d 1540, 1546-47 (11th Cir.1995), the court held that a Florida Guardian ad Litem had acted outside the scope of her authority by caring directly for a child, and consequently she was not entitled to qualified immunity. The court examined state statutes and a state-promulgated program training manual and found nothing that required a Guardian ad Litem to care directly for the child, which is what the *1508 defendant in that case had done. Id. In light of the Eleventh Circuit's guidance in Lenz, this court turns to the laws and policies of the State of Alabama to determine whether Smith was acting within the scope of her discretionary authority.
In Alabama, the court[10] appoints juvenile probation officers who must be certified by the Department of Youth Services. Ala. Code § 12-15-7(a) (1975). These probation officers serve at the pleasure of the court. Id. According to the Alabama Rules of Juvenile Procedure, the Chief Probation Officer
shall be responsible directly to the judge for coordinating the probation services of the court, their internal procedures, budgeting, office management, allocation of space, and personnel transactions.
Ala.R.Juv.P. 5 (1995). The Alabama Code further defines the responsibilities of a juvenile probation officer by providing that
[f]or the purpose of carrying out the objectives and purposes of this chapter and subject to the limitations of this chapter or imposed by the court, a probation officer shall:
(1) Make investigations, reports and recommendations to the juvenile court;
(2) Receive and examine complaints and allegations of delinquency, in need of supervision or dependency of a child for the purpose of considering the commencement of proceedings under this chapter;
(3) Refer to the department of human resources for investigations, reports and recommendations those complaints and allegations of dependency or other appropriate matters and may refer to the department of human resources for investigations, reports and recommendations those complaints on children in need of supervision;
(4) Supervise and assist a child placed on probation or in his protective supervision or aftercare by order of the court or other authority of law;
(5) Make appropriate referrals to other private or public agencies of the community if their assistance appears to be needed or desirable;
(6) Make predisposition studies and submit reports and recommendations to the court as required by this chapter, except as provided in subdivision (3) of this subsection; and
(7) Perform such other functions as are designated by this chapter or directed by the court.
Ala.Code § 12-15-7(b) (1975). In addition to outlining the aforementioned responsibilities, the Alabama Code provides that
a probation officer or representative of the department of human resources, with the approval of the court, shall have the power to take into custody and place in shelter or detention care a child who is under his supervision as a delinquent, in need of supervision or dependent when the probation officer or representative of the department of human resources has reasonable cause to believe that the child has violated the conditions of his probation, aftercare or terms of protective supervision or that he may flee from the jurisdiction of the court. A probation officer does not have the powers of a law enforcement officer with respect to a person who is not on probation or otherwise under his supervision.
Ala.Code § 12-15-7(c) (1975) (emphasis added). Finally, Alabama law specifies that if a probation officer takes a child into custody, he must proceed as provided in § 12-15-58. Ala.Code § 12-15-7(d) (1975).
Rather than pointing the court to any authority that supports her contention that she was acting within the scope of her authority, Smith attempts to discharge her burden of proving that she was acting within her authority by arguing that it is undisputed that she was chief probation officer and that her duties included approval of admission of juveniles to the juvenile detention facility in the event the District judge was unavailable. Smith offers no citation to any statute, rule, or order of court that supports this understanding *1509 of her duties as chief probation officer.[11]
According to Smith's deposition testimony, either she or a juvenile court judge could refer a juvenile to the Lowndes County Juvenile Detention Center. She testified that part of her responsibilities as a juvenile probation officer included determining whether a child should be detained. She does not reveal the source of this responsibility. Moreover, Smith offers no authority which compels this court to consider whether a state actor believed that she was acting within the scope of her authority when the alleged violation occurred. Thus, Smith's misperceptions about the reach of her authority as chief juvenile probation officer are not relevant to this court's inquiry.
This court need not rely on the arguable grant of authority to Smith to make a detention decision that is found in the Lowndes County Juvenile Detention Center Guide. The Lowndes County Juvenile Detention Center Guide states that juvenile probation officers and juvenile court judges are the only sources of referral for the Lowndes County Juvenile Detention Center. (Ptf. Ex. 2 in Opposition to Vaughner's Motion for Summary Judgment at p. 5). This is a county manual which not only appears to have been drafted by Smith, but also fails to cite any state rule or statute upon which it is based. To the extent that the manual might authorize Smith to order detention of a juvenile without approval of the juvenile judge, it exceeds the authority granted to juvenile probation officers by state law.
The court holds that Smith was acting outside her discretionary authority in authorizing detention without approval of the juvenile court. Therefore, she is not entitled to qualified immunity.
Since the court has found that Smith is not entitled to the protection of qualified immunity, the court must now determine if there is evidence that supports AM's claims that his rights under the Eighth Amendment or the Fourth Amendment were violated by Smith's actions.

Eighth Amendment
The detention at issue in this case is a pretrial detention of AM. As previously explained, AM cannot allege an Eighth Amendment violation under the facts in this case. Smith's Motion for Summary Judgment on AM's claims for Eighth Amendment violations is due to be GRANTED.

Fourth Amendment
The evidence in this case supports AM's contention that his detention in the Lowndes County Juvenile Detention Center without any sort of procedural determination of whether there was probable cause to believe that he committed an offense violated his federally protected rights under the Fourth Amendment. AM contends that Smith's decision to impose pretrial detention upon him, an accused juvenile, without a lawful determination of whether there was probable cause to believe that he had committed an offense amounted to a deprivation of rights secured by the Fourth Amendment and made applicable to the states by incorporation through the Fourteenth Amendment. Indeed, in this circuit, while a full due process hearing is not necessarily required,
[a] finding of probable cause  i.e., of facts and circumstances sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense, is central to the [Fourth] Amendment's protections against official abuse of power. Pretrial detention is an onerous *1510 experience, especially for juveniles, and the Constitution is affronted when this burden is imposed without adequate assurance that the accused has in fact committed the alleged crime.
Moss v. Weaver, 525 F.2d 1258, 1260 (5th Cir.1976) (internal citations and quotations omitted). The undisputed facts in this case suggest that AM was detained without a prior determination of probable cause. Not only does it appear that Smith disregarded state law concerning the detention of juveniles when she authorized AM's detention, but more important for purposes of this suit, there is no evidence that suggests that she gave AM appropriate pre-detention process. Thus, Smith's Motion for Summary Judgment is due to be DENIED as it applies to AM's Fourth Amendment claim against Smith in her individual capacity.
Even if this court has incorrectly found that Smith is not entitled to qualified immunity because she acted outside of the scope of her discretionary authority, there would be no practical impact on the outcome of this case. In the following section of this opinion, the court will examine the objective reasonableness of Smith's alleged conduct as an alternative basis for its holding that AM may proceed with his claims against Smith in her individual capacity for due process violations, but not for alleged Eighth Amendment violations.

c. Objective Reasonableness of Smith's Alleged Conduct
Assuming arguendo that Smith had proven that she was acting within her discretionary authority, the burden then would shift to AM to prove that Smith did not act in good faith which must be done in the manner previously discussed.

Eighth Amendment
Although in his complaint AM alleges violations of both the Eighth Amendment prohibition on cruel and unusual punishment and the Due Process Clause protection from placement in a Juvenile Detention Center without a hearing, he offers no cases which clearly establish the contours of the Eighth Amendment right which he alleges Smith violated by her conduct. The court cannot allow AM to discharge his burden under the qualified immunity paradigm by simply pointing to general rules or abstract rights such as the idea that the Eighth Amendment forbids cruel and unusual punishment. AM must provide the federal case law which delineates the bright-line contours of that right. Since he has failed to meet this burden, Smith's Motion for Summary Judgment is due to be GRANTED as it pertains to AM's individual capacity claims under Section 1983 for violations of the Eight Amendment.

Fourth Amendment
Smith's decision to detain AM in the Juvenile Detention Center without a lawful determination of whether probable cause existed to believe that he had committed an offense violates the clearly established law of this circuit. AM contends that at the time Smith acted it was clearly established in this circuit that the practice of imposing pretrial detention upon accused juvenile delinquents without a determination that there is probable cause to believe that the accused has committed an offense amounted to a deprivation of rights secured by the Fourth and Fourteenth Amendments. The Moss case, 525 F.2d at 1260, clearly supports AM's contention. See also, Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Thus, the practice of detaining juveniles without a finding of probable cause violates the Fourth Amendment and this was at the time of the alleged conduct at issue in this case sufficiently clearly established that a reasonable state actor would have known that to act otherwise would violate that right.
The only remaining question would then be whether there is evidence from which a reasonable jury could conclude that Smith acted in a way that would amount to a violation of the clearly established law. This court finds that there is such evidence in this case. The undisputed evidence in this case shows that Smith authorized AM's detention for at least one day in the Lowndes County Juvenile Detention Center. She authorized this detention even though AM had not been brought in following an arrest by a law enforcement officer. There was no adjudication of delinquency, nor a filing of a delinquency *1511 petition. According to Smith, she authorized the detention because she thought that it would do AM some good to have some time to think. There is no evidence that a legal determination was made that there was probable cause to believe that AM had committed an offense at the time that she authorized his detention. Therefore, Smith is not entitled to the protection of qualified immunity regardless of whether she acted beyond the scope of her discretionary authority and her Motion for Summary Judgment on that basis is due to be DENIED.

4. Injunctive Relief
Smith argues that the Amended Complaint which added her as a defendant did not include a demand for injunctive relief against her in either her official or individual capacities and that injunctive relief against her is due to be denied. She also contends that no policy or custom exists that can be enjoined. Finally, she asserts that injunctive relief is inappropriate because AM is no longer being detained.
The amended complaint contains the following request for injunctive relief
[i]ssue injunctive relief directing Defendant to refrain from placing plaintiff and others similarly situated in the county jail and/or the Lowndes County Juvenile Detention Facility as a means of punishment for violation of school rules.
(Am.Comp. p. 12). The court notes at the outset that AM has no standing to seek relief on behalf of anyone other than himself. The court has not certified this suit as a class action. To the extent that the injunctive relief that AM seeks is forward looking, this court cannot say that the need for it is obviated by the fact that AM is not presently detained. Thus, to the extent that AM can prove at trial that an official policy or custom has caused him to suffer constitutional deprivations and that he is a risk of similar deprivations in the future, he may continue to seek the injunctive relief that he has requested in his amended complaint.

V. CONCLUSION
In accordance with the foregoing Memorandum Opinion, it is hereby the ORDER of this court that:
1. Smith's Motion for Summary Judgment is GRANTED as it applies to AM's claims under 42 U.S.C. § 1985 and § 1986 and judgment is entered in favor of Smith as to those claims.
2. Smith's Motion for Summary Judgment is DENIED as it applies to AM's claims under 42 U.S.C. § 1983 against Smith in her official capacity for alleged deprivations of rights protected by the Fourth Amendment and GRANTED as it applies to AM's claims under 42 U.S.C. § 1983 against Smith in her official capacity for alleged deprivations of rights protected by the Eight Amendment prohibition on cruel and unusual punishment.
3. Smith's Motion for Summary Judgment is DENIED as it applies to AM's claims under 42 U.S.C. § 1983 against Smith in her individual capacity for alleged deprivations of rights protected by the Fourth Amendment and GRANTED as it applies to AM's claims under 42 U.S.C. § 1983 against Smith in her individual capacity for alleged deprivations of rights protected by the Eight Amendment prohibition on cruel and unusual punishment.
4. Smith's Motion for Summary Judgment is DENIED to the extent that it seeks dismissal of AM's requests for injunctive relief.
NOTES
[1] AM brings this action through his next friend and court-appointed Guardian ad Litem, Charles M. Law. AM sues under a fictitious name in order to protect his privacy. He resides in Lowndes County, Ala.
[2] The complaint incorrectly names a Jessica Jenkins as a defendant. In fact, AM's teacher is named Jesse Jenkins.
[3] Smith was added as a defendant by amended complaint filed on December 19, 1994. Plaintiff served a copy of the amended complaint on Smith on January 11, 1995. The court notes that Smith did not answer the complaint or move for summary judgment prior to this court's order of February 17, 1995. Thus, this court's February 17, 1995 opinion did not address AM's federal claims against Smith.
[4] In addition to his federal claims, AM raised several pendent state law claims including: negligence, false imprisonment, wantonness, outrage, and civil conspiracy.
[5] Smith is Lowndes County's Chief Probation Officer, and as such, she is allegedly responsible for the operation and supervision of the Lowndes County Juvenile Detention Facility.
[6] The Lowndes County Juvenile Detention Facility is located in the same building as the Lowndes County Jail.
[7] Later in Smith's deposition a copy of this manual was produced and identified as "The Lowndes County Juvenile Detention Center Guide." Smith Dep. at p. 23.
[8] Decisions of the Fifth Circuit prior to October 1, 1981 are binding in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1210 (11th Cir.1981).
[9] AM has incorporated by reference all prior submissions.
[10] The Alabama Rules of Juvenile Procedure specify that it is the juvenile judge who appoints the chief probation officer. Ala.R.Juv.P. 5 (1995).
[11] Smith argues that AM's own statement of fact indicates that Smith was acting within the scope of her discretionary function. The statement of fact to which Smith refers was prepared in opposition to the motion for summary judgment filed by another defendant earlier in the case. The court does not agree with Smith's construction of AM's statement of facts. The statement indicates that Smith is the chief juvenile probation officer and that, as such, her duties and responsibilities include the supervision of juveniles detained in the juvenile detention facility, the scheduling of hearings, and the supervision of a juvenile's release from detention. The statement also notes that Smith testified that she was also responsible for determining whether a child should be detained in the juvenile detention center. This statement does not mean that AM believes Smith to have responsibility or authority to decide on her own when a child can be detained; it simply acknowledges that Smith thinks she has that authority.